1
2
3
4
5
6
7
8            **IN THE UNITED STATES DISTRICT COURT**
9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11   DON EPIGMENIO RAMIREZ,                    No.  2:19-CV-0845-DMC
12               Plaintiff,
13        v.                                    MEMORANDUM OPINION AND ORDER
14   DAVID BERNHARDT,
15               Defendant.
16
17            Plaintiff, proceeding pro se, brings this civil action.  Pursuant to the written

18   consent of all parties, this case is before the undersigned as the presiding judge for all purposes,

19   including entry of final judgment.  See 28 U.S.C. § 636(c); see also ECF No. 19 (order

20   reassigning case).

21            Pending before the Court is Defendant David Bernhardt's (Secretary of the

22   Department of Interior) motion for summary judgment, ECF No. 26.  Plaintiff appears to oppose

23   the motion with responses to the declarations Defendant filed.  See ECF Nos. 30, 31, and 33.  In

24   Plaintiff's responses he admits undisputed facts and denies disputed facts.  See generally id.

25   With each denial Plaintiff explains why the fact is disputed.  See generally id.  While he does fail

26   to cite to evidence, he does sign his responses under the penalty of perjury.  See ECF No. 30, pg.

27   38; see also ECF No. 31, pg. 6; see also ECF No. 31-1, pg. 4; see also ECF No. 31-2, pg. 2; see

28

                                          1

also ECF No. 33, pg. 4.  Also pending before the Court is Defendant's motion to strike Plaintiff's responses as untimely.  See ECF No. 32, pg. 1.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff makes three claims against the Defendant:  (1) an equal employment opportunity claim under 42 U.S.C. § 2000e; (2) a defamation, slander, and libel claim under 28 U.S.C. § 4101; and (3) a conspiracy claim under 18 U.S.C § 241.  ECF No. 23, pg. 2.  Plaintiff believes that his three claims arise out of the following allegations.

Plaintiff alleges that the Defendant "conspired to eliminate any and all employment opportunities for the Plaintiff there at Lassen Volcanic National Park."  Id.  Plaintiff states that Gary Mott, the Chief of Maintenance, used "his position to eliminate any chance of permanent employment for the Plaintiff," doing so with what the Plaintiff alleges constituted a "false narrative."  Id.  Plaintiff further states that Mott "fabricated yet another false narrative to advertise and award the Plaintiff's seasonal job to a less qualified Caucasian male", regardless of the Plaintiffs rehire status, experience and qualifications. Defendant then allegedly waited until the last minute to notify the Plaintiff of the disposition of the desired job, justifying such with alleged "false statements and accusations."  Id.

Additionally, "Superintendent Steve Gibbons allegedly conspired with Gary Mott when he allowed this discriminating action to take place with regard to the permanent water treatment job, the Plaintiff asserts he was full aware of this situation."  Id.

Plaintiff continues stating that "[i]n Steve Gibbons EEOC testimony he claims the Plaintiff was in his office complaining almost every week, but yet never mentioned the permanent water treatment position to him once."  Id.  Plaintiff asserts this response was "Defamation and Libel as it depicted the Plaintiff as a poor employee, which in turn was a very valuable piece in this conspiracy."  Id. at 3.  Plaintiff states that "in reality Steve Gibbons stated to the Plaintiff he was going to support his Chief of Maintenance Gary Mott's decision with regard to the permanent water treatment position and his justification behind it."  Id.

Further, "Maintenance Supervisor Mike Hayden (south district) supported this conspiracy with his alleged misleading and false EEOC statements." Id.  And Merita Kimball, Maintenance Supervisor, "supplied alleged defamatory and Libel statements during the EEOC investigation with her comments and pictures depicting poor job performance with regard to the Plaintiffs [sic] bathroom cleaning practices . . . ." Id.  Kimball "produced a picture of mice feces on the counter of one of the Plaintiffs [sic] water treatment plants (when the truth is this was taken after this building had set for 6 months vacant through the winter, just another misleading and defaming action on her part)." Id.  Kimball "also went on the record asserting [Plaintiff] was some kind of predator and that she was fearful of riding with the Plaintiff vehicle [sic]." Id.

Kimball "is also on the record for making Slanderous comments against the Plaintiff with regard to operating her water plants and on one occasion after she blew up over one of these situations and lost the battle after she had called a meeting of our supervisors Mike Hayden and then Chief of Maintenance Kieth Farrah." Id.  "[A]fter said meeting and after Kieth Farrah and [Plaintiff] had left, Merita Kimball stated to Mike Hayden 'Didn't You Smell The Marijuana On Him' (referring to Plaintiff)." Id. (errors in original).  Plaintiff concludes stating, "This is just some of the animosity she has shown the Plaintiff in the past and who could be one of the key players in this conspiracy to eliminate the Plaintiff from the employment ranks of Lassen Volcanic National Park." Id.

## II. STANDARD FOR SUMMARY JUDGEMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

1   moving party

> . . . always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

Id. at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

1  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

2  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

3  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

4  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

5  judge, not whether there is literally no evidence, but whether there is any upon which a jury could

6  properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

7  imposed." Anderson, 477 U.S. at 251.

8

9                              **III. DISUCSSION**

10              Defendant moves for summary judgment arguing that (1) Plaintiff's Title VII

11  discrimination claim has no basis in fact or law; (2) Plaintiff's defamation, slander, and libel

12  claims are barred; and (3) there is no private right of action for criminal conspiracy under 18

13  U.S.C. § 241.  Defendant also moves to strike Plaintiff's responses as untimely.

14              A. Motion to Strike

15              Defendant's motion in its entirety states the following:

16              On April 19, 2022, after not receiving an Opposition by Plaintiff,
                Don Epigmenio Ramirez ("Ramirez") to Defendant's Motion for
17              Summary Judgment, the Court took Defendant's Motion off calendar
                and ordered this matter submitted on the record and briefs without
18              oral argument.

19              On April 25, 2022, Ramirez filed a response to Defendant's Motion.
                Ramirez's response to Defendant's motion is untimely and should be
20              stricken.

21  ECF No. 32, pg. 1.

22              Plaintiff argues that there was an issue in communication between Defendant and

23  Plaintiff where Plaintiff was at a different mailing address.  See ECF No. 35, pg. 2.  In

24  consideration of both the communication issue and Plaintiff's pro se status, the Court denies

25  Defendant's motion to strike.

26  / / /

27  / / /

28  / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B. Title VII Discrimination Claim

Title VII states the following:

> It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

"Title VII claims are analyzed through the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 [] (1973)."  Rivera v. East Bay Municipal Utility District, 799 Fed. Appx. 481, 483 (9th Cir. 2020).

1. Prima Facie Case

"First, a plaintiff must establish a prima facie case of disparate treatment."  Rivera, 799 Fed. Appx. at 483 (citing  Noyes v. Kelly Servs., 488 F.3d 1163, 1168 (9th Cir. 2007)).  A prima facie case may be established by showing:  (1) that the plaintiff is a member of a protected class; (2) that he was qualified for his position and performing his job satisfactorily; (3) that he experienced adverse employment actions; and (4) that "similarly situated individuals outside [plaintiff's] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination."  Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010) (quoting Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004)).

a. Protected Class

Plaintiff's complaint makes no specific declaration of membership in a protected class.  However, in his response to Defendant's motion, Plaintiff does mention that he is Hispanic.  See ECF No. 30, pgs. 10, 18.

/ / /

/ / /

### b. Qualification and Job Performance

Plaintiff states that he was fully qualified for the position and his construction background is why Plaintiff was hired when he first started as a water operator.  See id. at 17-18.  Plaintiff states that he had "been rehired for 11 years" as a water treatment operator.  See id. at 21.  Plaintiff also states that over the course of his time as a water treatment operator, he received letters of commendation on his work.  See id. at 21; see also ECF No. 33, pgs. 19, 20 (Plaintiff Exhibit 3).

### c. Adverse Employment Action

Plaintiff states in his verified complaint that Gary Mott "award[ed] the Plaintiff's seasonal job to a less qualified Caucasian male, regardless of the Plaintiffs [sic] rehire status, experience and qualifications."  ECF No. 23, pg. 2.  Plaintiff also alleges that "Mott utilized his position to eliminate any chance of permanent employment for the Plaintiff . . . ."  Id.

### d. Favorable Treatment

Plaintiff states that the qualifications for his seasonal position were lowered and that Defendant hired a white male maintaining the "Caucasian dominated workforce."  See ECF No. 30, pg. 31.  Further, "of the some close to 50 'Permanent Employees' there at Lassen Volcanic National Park at the time of the Plaintiff's departure, the Plaintiff alleges there were zero that weren't Caucasian."  Id.

In light of the above, the Court finds that Plaintiff has met his burden of showing a prima facie case of discrimination.

### 2. Defendant's Burden of Production

"Second, if the plaintiff establishes a prima facie case, '[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action.'"  Rivera, 799 Fed. Appx. at 483 (citing Chuang v. Univ. of California Davis, Bd. of Trs., 225 F.3d 1115, 1123-24 (9th Cir. 2000)).

/ / /

/ / /

/ / /

1    Defendant argues that Plaintiff "was not asked to return to LVNP [Lassen

2  Volcanic National Park] as a seasonable employee because he twice refused to comply with a

3  direct order from his supervisor to clean a park restroom."  ECF No. 26-1, pg. 9.  "Since

4  [Plaintiff] was only a seasonal employee, as opposed to a permanent one, he was not guaranteed a

5  position form [sic] one season to the next."  Id. at 9-10.  Defendant states that Plaintiff's "refusal

6  to perform his job responsibilities, not his race, was the basis for the decision not to ask [Plaintiff]

7  to return as a seasonal employee."  Id. at 10.

8    Defendant also argues that the decision not to hire Plaintiff "for a permanent

9  position also had nothing to do with his race."  Id.  Defendant argues that Plaintiff "had no right

10  to be hired as a permanent employee."  Id.  Defendant further states that "no one was hired for the

11  permanent Maintenance Worker/Water Treatment Operator position because, for budgetary

12  reasons, LVNP management decided to lateral an already **permanent** employee into the

13  vacancy."  Id. (emphasis in original).  Defendant contends that Plaintiff's "race was not a factor."

14  Id.

15    In light of the above, the Court finds that Defendant has met his burden of

16  production in articulating a nondiscriminatory reason for not rehiring Plaintiff and for not hiring

17  Plaintiff for a permanent position.

18    3. Credibility of Defendant's Proffered Explanation

19    Third, "[i]f the employer meets this burden, the plaintiff must raise a triable issue

20  of material fact, through direct or circumstantial evidence, demonstrating that the employer's

21  reasons for the challenged action are mere pretext and 'that a discriminatory reason more likely

22  motivated the employer.'"  Rivera, 799 Fed. Appx. at 483 (citations omitted).  "Circumstantial

23  evidence of pretext must be specific and substantial in order to survive summary judgment."

24  Bergene v. Salt River Project Agr. Imp. and Power Dist., 272 F.3d 1136, 1142 (9th Cir. 2001)

25  (citation omitted).   "Alternatively, an employee may offer evidence that the employer's proffered

26  explanation is unworthy of credence."  Rivera, 799 Fed. Appx. at 483 (citations omitted).

27  / / /

28  / / /

1    Plaintiff's evidence of pretext and that a discriminatory reason more likely

2    motivated the employer is neither very specific or substantial.  Plaintiff merely mentions that that

3    the qualifications for his seasonal position were lowered and that Defendant hired a white male

4    maintaining the "Caucasian dominated workforce."  <u>See</u> ECF No. 30, pg. 31.  Plaintiff also

5    contends that "of the some close to 50 'Permanent Employees' there at Lassen Volcanic National

6    Park at the time of the Plaintiff's departure, the Plaintiff alleges there were zero that weren't

7    Caucasian."  <u>Id.</u>

8    Plaintiff has not provided any documentation indicating a discriminatory

9    motivation on the part of Defendant nor has Plaintiff alleged that Defendant used any derogatory

10   words or used racial slurs in talking about or to Plaintiff.  The Court find that this evidence does

11   not constitute "substantial evidence" indicating that Defendant's actions were a pretext and that a

12   discriminatory reason more likely motivated him.

13   Plaintiff does, however, provide evidence that Defendant's proffered explanation

14   is unworthy of credence.  Defendant's sole reason in not rehiring Plaintiff was for not cleaning a

15   park restroom on October 15, 2015.  <u>See</u> ECF No. 26-1, pg. 9; <u>see also</u> ECF No. 26-4, pg. 2.

16   Defendant also mentions a report in 2013 that indicated he should "Do a more thorough job in

17   keeping restrooms clean."  ECF No. 26-4, pg. 15.

18   Plaintiff alleges that in his eleven years, this one report was the only negative

19   review Plaintiff had concerning his work.  <u>See</u> ECF No. 31, pg. 2.  However, the 2013 report

20   seems to actually be a positive review despite the comment to clean more thoroughly.  The 2013

21   report seems to indicate Plaintiff was doing an excellent job.  The report states, "This year has

22   been a very busy year in the Park.  [Plaintiff] has done a good job keeping the water systems

23   within compliance and making sure trash cans are emptied and restrooms cleaned.  His hard work

24   is much appreciated."  ECF No. 26-4.  The report further states, "[Plaintiff] continues to be an

25   asset to the park.  His knowledge and experience level provides the Warner Valley/Juniper Lake

26   area with a competent Water operator who really cares about the quality of water provided.

27   Thank you [Plaintiff] for your service this summer."  <u>Id.</u>

28   / / /

1    Concerning the cleaning of the bathroom in October of 2015, while in his job

2  description was "cleaning bathrooms", Plaintiff had not done so during the entirety of the 2015

3  season as Plaintiff took on extra responsibilities in maintaining additional water treatment plants.

4  See ECF No. 31, pg. 3.  Gary Mott direct Plaintiff to clean the bathroom.  Despite the fact that

5  Plaintiff had not cleaned bathrooms that season, Plaintiff accepted the assignment to clean the

6  bathroom.  See id.  After seeing the bathroom, Plaintiff realized that he did not have the proper

7  equipment "to tackle such a mess as the Plaintiff had not done any janitorial duties yet that

8  summer, so he locked it to address later."  Id.  Plaintiff only later refused to clean the bathroom

9  after discussing the issue with his direct supervisor that Mott was bullying Plaintiff, and the

10  supervisor agreed with Plaintiff that Plaintiff no longer needed to worry about cleaning the

11  bathroom.  Id. at 3-4.

12    Additionally, in November of 2015, after the bathroom incident, Plaintiff received

13  an email commending him for a "job well done."  ECF No. 33, pg. 19.  Gary Mott was also a

14  recipient of the email.  See id.; see also ECF No. 26-4, pg. 2.  The email highlights Plaintiff's

15  responsibilities that year, the burden in maintaining five water treatment plants, and the

16  excellence with which he maintained the facilities.  See id.

17    In light of the above, the Court finds that Plaintiff has carried his burden in

18  bringing into question the veracity of Defendant's decision to no longer rehire Plaintiff.

19  Therefore, Defendant's motion is denied as to Plaintiff's Title VII claim.

20    C. Defamation, Slander, and Libel

21    Plaintiff's defamation, slander, and libel claims brought under 28 U.S.C. § 4101

22  (the "SPEECH Act") are legally deficient because the SPEECH Act bars United States'

23  enforcement of foreign defamation orders that conflict with United States' laws including the

24  First Amendment and Communications Decency Act.  See 28 U.S.C. § 4101.  The Act provides

25  no independent cause of action and Section 4101 merely defines the term "defamation" as used in

26  the SPEECH Act.

27  / / /

28  / / /

Additionally, to the extent Plaintiff attempts to assert common law defamation, slander, and libel claims, these claims are barred because Plaintiff failed to file an administrative tort claim with the Department of Interior within two years after his claims accrued.  See 28 U.S.C. § 2401(b) (stating that a tort claim against the United States "shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues"); McNeil v. United States, 508 U.S. 106, 113 (1993).

It is undisputed that Plaintiff's defamation, slander, and libel claims are based on purported statements Plaintiff claims were made during his employment in 2015 and/or during his EEOC investigation, which concluded in April of 2017.  See ECF No. 23; see also ECF No. 26-3, pg. 29.  Plaintiff has never filed an administrative tort claim with the Department of Interior alleging defamation, slander, or libel, let alone within two years from accrual.  See ECF No. 26-6, pg. 1-2.  For this reason, Plaintiff's defamation, slander, and libel claims are barred.  Defendant's motion is granted as to Plaintiff's defamation, slander, and libel claims.

D. Conspiracy

Plaintiff's criminal conspiracy claim brought under 18 U.S.C § 241 fails as a matter of law.  Title 18 U.S.C. § 241 is a criminal civil rights statute.  There is no private right of action to enforce this statute.

In so far as Plaintiff is alleging conspiracy under § 1983, Plaintiff's claim also fails.  To prove a conspiracy, Plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights."  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002).  "The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage."  Mendocino Envtl. Ctr. V. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).  Plaintiff is "required to produce 'concrete evidence' of an agreement or 'meeting of the minds'" between Defendant and his conspirators.  See Fenters v. Yosemite Chevron, 761 F. Supp. 2d 957, 994 (E.D. Cal. 2010) (citing Radcliffe v. Rainbow Const. Co., 254 F.3d 772, 782 (9th Cir.2001)).

/ / /

/ / /

11

1         Here, Plaintiff fails to produce concrete evidence of an agreement or meeting of

2 the minds.  Plaintiff alleges in his first amended complaint that "Superintendent Steve Gibbons

3 allegedly conspired with Gary Mott when he allegedly allowed this discriminating action to take

4 place with regard to the permanent water treatment job, the Plaintiff asserts he was full aware of

5 this situation."  ECF No. 23, pg. 2 (errors in original).  Additionally, Plaintiff states,

6 "Maintenance Supervisor Mike Hayden (south district) supported this conspiracy with his alleged

7 misleading and false EEOC statements."  Id. at 3.  Further, Plaintiff states that Merita Kimball

8 "could be one of the key players in this conspiracy to eliminate the Plaintiff from the employment

9 ranks of Lassen Volcanic National Park."  Id.

10         Plaintiff does not cite to any piece of evidence demonstrating an agreement

11 between the alleged conspirators.  Plaintiff's allegations without evidentiary support are too

12 conclusory and speculative to maintain a conspiracy action at the summary judgment stage.

13 Therefore, Defendant's motion is granted as to Plaintiff's conspiracy claim.

14

15                          **IV. CONCLUSION**

16         In light of the above, Defendant's motion, ECF No. 26, is denied in part and granted

17 in part.

18         Accordingly, IT IS HEREBY ORDERED that:

19         1.      Defendant's motion for summary judgment is denied as to Plaintiff's Title

20 VII;

21         2.      Defendant's motion is granted as to Plaintiff's defamation, slander, and libel

22 claims; and

23         3.      Defendant's motion is granted as to Plaintiff's conspiracy claim.

24

25 Dated:  June 14, 2022

26                                   _____

27                                   DENNIS M. COTA
                                  UNITED STATES MAGISTRATE JUDGE

28