1

2

3

4

5

6

7

8                        **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DON EPIGMENIO RAMIREZ,                    No.  2:19-CV-0845-DMC

12              Plaintiff,

13        v.                                   MEMORANDUM OF DECISION

14   DEB HAALAND,

15              Defendant.

16

17              Plaintiff, who is proceeding pro se, brings this civil action.  Pursuant to the written

18   consent of all parties, this case is before the undersigned as the presiding judge for all purposes,

19   including entry of final judgment.  See 28 U.S.C. § 636(c); see also ECF No. 19 (order

20   reassigning case to Magistrate Judge).  The parties appeared before the undersigned in Redding,

21   California, on October 25, 2022, for a bench trial.  Pursuant to Federal Rule of Civil Procedure

22   52(a)(1)[1], the Court issues this memorandum opinion and decision in which the Court sets forth

23   its findings of facts and conclusions of law.

24

25        [1]        Rule 52(a) provides in relevant part:

26                   (1) In an action tried on the facts without a jury. . ., the court must
     find the facts specially and state its conclusions of law separately. The
27   findings and conclusions may be stated on the record after the close of the
     evidence or may appear in an opinion or a memorandum of decision filed
28   by the court.

                                                     1

1

## I. PLAINTIFF'S ALLEGATIONS

2         This action proceeds on Plaintiff's pro se first amended complaint as against

3   Defendant Deb Haaland, Secretary, Department of the Interior.  See ECF No. 23. There Plaintiff

4   raised three claims against Defendant: (1) an equal employment opportunity claim under 42

5   U.S.C. § 2000e; (2) a defamation, slander, and libel claim under 28 U.S.C. § 4101; and (3) a

6   conspiracy claim under 18 U.S.C § 241.  See id. at 2.  However, following Defendant's Motion

7   for Summary Judgment, ECF No. 26, the Court ruled on June 14, 2022, that this action would

8   proceed to trial on a single claim – Plaintiff's employment discrimination claim under Title VII,

9   42 U.S.C. § 2000e-2(a).  See ECF No. 40.  The Court held that Plaintiff's defamation claim is

10  barred under the SPEECH Act, 28 U.S.C. § 4101.  See id. at 10-11.  The Court also concluded

11  that Plaintiff's conspiracy claim under 18 U.S.C. § 241 could not proceed.  See id. at 11-12.

12

13

## II. BURDEN OF PROOF AND LEGAL STANDARD

14        The Plaintiff's burden of proof in the pending civil action is that of preponderance

15  of evidence, or proof by the greater weight of evidence.

16         Title VII, 42 U.S.C. sec 2000e-2(a) governs Plaintiff's remaining claim in this

17  action. That section provides:

18        It shall be an unlawful employment practice for an employer—(1) to fail
          or refuse to hire or to discharge any individual, or otherwise to
19        discriminate against any individual with respect to his compensation,
          terms, conditions, or privileges of employment, because of such
20        individual's race, color, religion, sex, or national origin; or (2) to limit,
          segregate, or classify his employees or applicants for employment in any
21        way which would deprive or tend to deprive any individual of
          employment opportunities or otherwise adversely affect his status as an
22        employee, because of such individual's race, color, religion, sex, or
          national origin.
23
          42 U.S.C. § 2000e-2(a).
24

25         Such Title VII claims are subject to the burden shifting analysis set forth in

26  McDonald Douglas Corporation v. Green, 411 U.S. 792 (1973).  See Rivera v. East Bay

27  Municipal Utility District 799 Fed Appx. 481, 483 (9th Cir. 2020).  In ruling on Defendant's

28  Summary Judgment in the instant case, ECF No. 40, the Court found that Plaintiff met his burden

of establishing a prima facie case of employment discrimination, and that the burden of

production then shifted to Defendant to articulate some legitimate, nondiscriminatory reason for

Defendant's election not to rehire Plaintiff.  See ECF No. 40. The Court also found that

Defendant's met their burden in the contentions that Plaintiff was not asked to return as a

seasonal employee because he twice refused to comply with a direct order from his supervisor to

clean a park restroom, and that as a seasonal, not permanent employee, Plaintiff had no guarantee

of a future position.  See id. These defenses, along with Defendant's further contentions that

Plaintiff's position was filled for budgetary, not racial considerations, were then subject to the

Court's evaluation of the credibility of Defendant's proffered explanations. Id. at 7-8.

On Summary Judgment, the Court found that:

> "If the employer meets this burden, the plaintiff must raise
> a triable issue of material fact, through direct or circumstantial evidence,
> demonstrating that the employer's reasons for the challenged action are
> mere pretext and 'that a discriminatory reason more likely motivated the
> employer.'"  Rivera, 799 Fed. Appx. at 483 (citations omitted).
> "Circumstantial evidence of pretext must be specific and substantial in
> order to survive summary judgment."  Bergene v. Salt River Project Agr.
> Imp. and Power Dist., 272 F.3d 1136, 1142 (9th Cir. 2001) (citation
> omitted).   "Alternatively, an employee may offer evidence that the
> employer's proffered explanation is unworthy of credence."  Rivera, 799
> Fed. Appx. at 483 (citations omitted).
>      Plaintiff's evidence of pretext and that a discriminatory
> reason more likely motivated the employer is neither very specific or
> substantial.  Plaintiff merely mentions that that the qualifications for his
> seasonal position were lowered and that Defendant hired a white male
> maintaining the "Caucasian dominated workforce."  See ECF No. 30, pg.
> 31.  Plaintiff also mentions, "of the some close to 50 'Permanent
> Employees' there at Lassen Volcanic National Park at the time of the
> Plaintiff's departure, the Plaintiff alleges there were zero that weren't
> Caucasian."  Id.
>      Plaintiff has not provided any documentation indicating a
> discriminatory motivation on the part of Defendant nor has Plaintiff
> alleged that Defendant used any derogatory words or used racial slurs in
> talking about or to Plaintiff.  The Court find that this evidence is not
> substantial evidence indicating that Defendant's actions were a pretext and
> that a discriminatory reason more likely motivated him.
>      Plaintiff does, however, provide evidence that Defendant's
> proffered explanation is unworthy of credence. . . .

ECF No. 40, pgs. 8-10.

The Court having concluded on Summary Judgment that Plaintiff had in fact

carried the burden of bringing into question the veracity of Defendant's explanation, this matter

proceeded to trial for determination of the credibility of the explanation for Defendant's acts and omissions here, and the related disputed factual issues identified by the Parties.

### III.  RULINGS ON MOTIONS IN LIMINE AND POST-TRIAL OBJECTIONS

On June 24, 2022, the Court directed the parties to file a joint pre-trial statement and motions in limine for hearing at a pre-trial conference.  See ECF No. 47.  The parties appeared before the undersigned on September 22, 2022, for a pre-trial conference and the Court issued a final pre-trial order on September 29, 2022.  See ECF No. 61.

### A.   **Motions in Limine**

At the final pre-trial conference, the Court ruled on pending motions in limine as follows:

#### 1.   Plaintiff's Motions

In motion in limine no. 1, Plaintiff seeks an order precluding Gary Mott's testimony to the Equal Employment Opportunity Commission (EEOC).  In motion in limine no. 2, Plaintiff seeks the same relief as to testimony offered to the EEOC by Steve Gibbons, and in motion in limine no. 3, Plaintiff seeks exclusion of Michael Hayden's EEOC testimony.  In support of all three motions, Plaintiff contends that these witnesses' EEOC testimony is "tainted" because the witnesses were not sequestered, were present for the testimony of the others, and thus could have collaborated as to their statements.

Plaintiff's motions were granted at the pre-trial conference and the declarations were excluded insofar as they were not entered into evidence in lieu of the witnesses' live testimony.  Plaintiff was, however, permitted to use the EEOC declarations for impeachment purposes.

#### 2.   Defendant's Motion

In her only motion in limine, no. 1, Defendant seeks an order precluding Plaintiff from offering at trial any evidence which should have but was not disclosed during discovery. Consistent with Federal Rule of Civil Procedures 26 and 37, this motion was denied without prejudice to renewal at time of trial in the context of specific evidence offered by Plaintiff which was not produced during discovery.

///

///

### B.     Post-Trial Objections

A bench trial was conducted before the undersigned on October 25, 2022.[2] Following the presentation of evidence, the Court set a schedule for post-trial briefing.  The parties were directed to file simultaneous written closing arguments, with the parties permitted to file simultaneous responses thereto, and Plaintiff permitted to file a final rebuttal brief in response to Defendant's arguments.  The parties have filed the following post-trial briefs:

| November 15, 2022 | ECF No. 68 | Defendant's closing argument. |
| November 15, 2022 | ECF No. 69 | Plaintiff's closing argument. |
| November 21, 2022 | ECF No. 70 | Defendant's reply closing argument. |
| November 21, 2022 | ECF No. 71 | Defendant's objections to Plaintiff's closing argument. |
| November 23, 2022 | ECF No. 72 | Plaintiff's final closing argument. |
| November 29, 2022 | ECF No. 73 | Defendant's objections to Plaintiff's final closing argument. |
| November 28, 2022 | ECF No. 74 | Plaintiff's first rebuttal to Defendant's objections to Plaintiff's final closing argument. |
| November 30, 2022 | ECF No. 75 | Plaintiff's second rebuttal to Defendant's objections to Plaintiff's final closing argument. |
| December 2, 2022 | ECF No. 76 | Defendant's objections to Plaintiff's first and second rebuttals. |
| December 5, 2022 | ECF No. 77 | Plaintiff's response to Defendant's objections. |

To the extent Defendant objects to consideration of any of Plaintiff's post-trial briefs because they were not filed consistent with the briefing schedule set by the Court at the conclusion of trial, such objections are overruled.  Given Plaintiff's pro se status and to provide the fullest opportunity to be heard on his claim, the Court will consider all of Plaintiff's post-

---

[2] The action was tried without a jury pursuant to the parties' stipulation.  See ECF Nos. 43, 45.

1  trial submissions.  The Court finds no prejudice to Defendant in doing so.

2  / / /

3  ### IV.  STIPULATED FACTS

4  The parties have stipulated that the following facts are undisputed:

5       1.     Ramirez was born on September 26, 1954.

6       2.     Ramirez was a temporary, seasonal Maintenance Worker,
WG-4749-07, at U.S. Department of the Interior ("DOI"), National Park
7  Service ("NPS"), Lassen Volcanic National Park, ("LVNP") Mineral, CA.

8       3.     Ramirez worked at LVNP from 2002 to 2015 during the
months of May through November as a temporary, seasonal employee.
9

10       4.     Ramirez was not asked to return to his temporary, seasonal
Maintenance Worker position in 2016.

11       5.     Michael Hayden was the Building and Maintenance
Supervisor at DOI/NPS/LVNP from May 2014 until his retirement in
12  January 2019.

13       6.     Hayden was Ramirez's direct supervisor during the 2014
and 2015 seasons at LVNP.
14

15       7.     Gary Mott has been the Supervisory Facilities Operations
Specialist and Chief of Maintenance, GS-13, at DOI/NPS/LVNP since
16  March 2015.

17       8.     Mott was Ramirez's second-line supervisor during the 2015
season at LVNP.

18       9.     Stephen Gibbons was Superintendent, GS-14, of
DOI/NPS/LVNP from November 2014 until his retirement in 2017.
19  Gibbons was employed at NPS since November 22, 1982.

20       10.     Gibbons was Ramirez's third-line supervisor during the
2015 season at LVNP.
21

22       11.     Since Ramirez only occupied a temporary, seasonal
position, as opposed to a permanent one, he was not guaranteed a position
from one season to the next.
23

24       12.     Ramirez's temporary, seasonal appointment did not confer
eligibility to be promoted or reassigned to other positions at LVNP.

25       13.     Ramirez had reinstatement eligibility that afforded him an
opportunity to potentially return each season depending on his
26  performance, the needs of LVNP, and if funding was available.

27

28

14.    Ramirez's temporary, seasonal appointment could be terminated at any time prior to the end of the specified appointment period.

15.    As a temporary, seasonal appointment, Ramirez was not eligible for healthcare or any other benefits at LVNP.

16.    Ramirez filed an Equal Employment Opportunity ("EEO") complaint on April 14, 2016.

17.    Ramirez first initiated EEO counselor contact on April 14, 2016.

18.    The office of Equal Employment Opportunity of the Department of Interior's Office of Civil Rights Agency initiated an investigation of Ramirez's claims from June 2016 through December 2016.

19.    On April 10, 2017, the Department of Interior's Office of Civil Rights Agency issued a Final Agency Decision denying Ramirez's discrimination claims on the merits pursuant to 29 C.F.R. § 1614.110.

20.    On May 13, 2019, Ramirez filed a federal complaint against David Bernhardt (former Secretary of the United States Department of Interior) asserting claims under (1) 42 U.S. Code 2000e-2- Unlawful Employment Practices (a)/1 & 2-(b)/(1) & (2); (2) 29 U.S. Code Chapter 14-Age Discrimination in Employment; and (3) Executive Order 11246-Affirmative Action. Complaint, p. 3 A.I.

21.    On April 1, 2021, Ramirez filed an Amended Complaint, asserting a claim for race discrimination under Title VII, based on Defendant's decisions to not ask him back as a seasonal Maintenance Worker or hire him for a permanent position. Ramirez also asserts claims under 28 U.S.C § 4101 for defamation, slander, and libel, and under 18 U.S.C § 241 for conspiracy.

22.    Ramirez seeks damages for projected wage loss for the permanent Maintenance Worker position for a period of ten years from 2016. See ECF No. 23 (Amended Complaint).

23.    After his employment at LVNP, Ramirez has not sought other employment and/or has not been employed. Plaintiff contends that his home is in Mill Creek, CA 96061, it is bought and paid for and has been home since 1980's, my job in Lassen Volcanic National Park was perfect for my retirement plans here in this area and why I put so much time and effort into it. To seek water treatment elsewhere, would require me to move out of the area and most likely have to sell my house. In the beginning I had hopes that I would get my job back (and would still entertain that), but as time went by and by as this attempt at redemption has taken what seems forever (going on seven years!) this took a major toll on my finances making it literally impossible to move somewhere else at this point. Which left me to survive on Social Security (which I had to apply for as soon as I was eligible) and EBT (food stamps) allotment. So, I am not starving, and paying my bills, but living far from what I was accustomed to. I don't feel I should have to chase employment if in fact it

is going to totally disrupt my life and force me to move and sell me home. . .

///

///

24.     On June 15, 2022, this Court denied Defendant's Motion for Summary Judgment on Ramirez's Title VII race discrimination claim, but granted Defendant's Motion on Ramirez's claims for conspiracy, defamation, libel and slander.

ECF No. 54-1 (Exhibit 1 to joint pre-trial statement); ECF No. 61 (final pre-trial order).

These facts are deemed stipulated and established for purposes of this memorandum of decision.  Further references to these stipulated facts will be to the facts as numbered above.

## V.  DISPUTED FACTUAL ISSUES

The Parties contend that the following factual issues are in dispute:

1.     Whether Ramirez was not asked to return for a Seasonal Maintenance Worker, WG-4749-07, position in 2016 based on his race.

2.     Whether Ramirez was not considered for the vacant, permanent Maintenance Worker, WG-4749-07, position based on his race.

3.     Whether Ramirez suffered any damages as a result of Defendant's alleged discrimination, and if so, in what amount.

4.     Whether Ramirez mitigated his damages.

5.     Whether, as a temporary, seasonal Maintenance Worker, Ramirez had a broad spectrum of responsibilities.

6.     Whether Ramirez was expected to assist with park maintenance, including building repairs, painting, carpentry, masonry, and plumbing.

7.     Whether Ramirez's job responsibilities included custodial duties of cleaning restrooms, mopping and waxing floors, cleaning mirrors, windows, urinals, and toilet bowls.

ECF No. 54-1 (Exhibit 1 to joint pre-trial statement); ECF No. 54-2 (Exhibit 2 to joint pre-trial statement); ECF No. 61 (final pre-trial order).

The Court here finds that these disputed factual issues and the related issue of the

credibility of the explanations for Defendant's acts and omissions define the scope of argument and relevant evidence at trial.  See ECF No. 61.

///

///

## VI.  EVIDENCE ADDUCED AT TRIAL

In addition to the stipulated facts agreed to by the Parties, at trial the Court received evidence in the form of testimony from Plaintiff and from three Defense witnesses: Stephen Gibbons; Michael Hayden; and Gary Mott, which testimony is set forth in the trial transcript at ECF No. 65. The Court also received into evidence the exhibits listed below, each of which were offered by Defendant.  None of Plaintiff's exhibits (marked as Exhibits A through F) were offered or admitted.

| | | |
|---|---|---|
| Exhibit 101 | 4 pages | Position Description, Maintenance Worker, WG-4749-07. |
| Exhibit 102 | 1-page | Notification of Personnel Action. |
| Exhibit 103 | 4 pages | Temporary/Excepted Employee Performance Appraisal Plan. |
| Exhibit 106 | 1-page | List of employee names, positions, and races/ethnicities. |
| Exhibit 107 | 3 pages | Four photographs of the outhouse at the Warner Valley Campground in October and November 2015.[3] |
| Exhibit 108 | 3 pages | One photograph of the interior of the Drakesbad pumphouse on May 12, 2015; two photographs of the interior of Plaintiff's government vehicle on May 13, 2015. |
| Exhibit 110 | 1-page | December 15, 2015, letter from Stephen Cole to Stephen Gibbons. |
| Exhibit 112 | 14 pages | November 13, 2016, affidavit of Plaintiff. |
| Exhibit 114 | 9 pages | Pages 6 through 14 of Plaintiff's response affidavit. |
| Exhibit 120 | 36 pages | Plaintiff's responses to Defendant's interrogatories, set one. |

---

[3]     As originally marked Exhibit 107 consists of 4 pages.  The fourth page containing a single photograph of a toilet at the Crag Campground was not offered or admitted into evidence.

1

2   / / /

3   / / /

4   / / /

5   **VII.  FINDINGS OF FACT**

6          Pursuant to Federal Rule of Civil Procedure 52(a)(1), the Court has carefully

7   weighed and considered all of the stipulated and admissible evidence the Court specially makes

8   the following findings of fact with respect to the disputed factual questions outlined above:

9          **1.      Was Ramirez not asked to return for a Seasonal Maintenance**
           **Worker position in 2016 based on his race**

10

11                          **and**

12         **2.      Was Ramirez not considered for the vacant, permanent**
           **Maintenance Worker position based on his race**

13         The Court finds in the negative as to both questions of fact.  This finding is based

14  on a combination of stipulated facts and findings from the evidence at trial.  Stipulated facts

15  informing this finding include:

16                 2.      Ramirez was a temporary, seasonal Maintenance Worker,
           WG-4749-07, at U.S. Department of the Interior ("DOI"), National Park

17         Service ("NPS"), Lassen Volcanic National Park, ("LVNP") Mineral, CA.

18                 11.     Since Ramirez only occupied a temporary, seasonal
           position, as opposed to a permanent one, he was not guaranteed a position

19         from one season to the next.

20                 12.     Ramirez's temporary, seasonal appointment did not confer
           eligibility to be promoted or reassigned to other positions at LVNP.

21

22                 13.     Ramirez had reinstatement eligibility that afforded him an
           opportunity to potentially return each season depending on his

23         performance, the needs of LVNP, and if funding was available.

24                 14.     Ramirez's temporary, seasonal appointment could be
           terminated at any time prior to the end of the specified appointment

25         period.

26         In addition to these stipulated facts, the Court's finds that at trial Plaintiff

27  admitted that neither Mr. Hayden, Mr. Mott, nor Mr. Gibbons ever made a racially derogatory

28  remark to Plaintiff.  At the trial, Plaintiff specifically testified that he does not claim that Mr.

Hayden made any decision relating to Plaintiff's employment based on race. 60:1-3. Other than Plaintiff's contrary contentions in this regard, Plaintiff admitted at trial that there are no witnesses, no writings, emails, texts, or memos to corroborate Plaintiff's accusations that Mr. Mott, Mr. Gibbons, or Mr. Hayden made a decision based on Plaintiff's race. 60:13-23. As to Mr. Mott, Plaintiff testified at trial that he believed Mott was motivated by jealousy over Plaintiff's prior participation in international freestyle skiing. 80:10-25. Further, Mr. Hayden testified that he did not make any decision based on Plaintiff's race. 59:9-60:3; 60:4-7.

Plaintiff also admitted at trial that he has not provided the Court with any data, analysis, or studies regarding the racial demographics of some of the Lassen workforce. 81:10-25. In this regard, the Court notes that Exhibit 106 was admitted into evidence. Exhibit 106 is a one-page documents listing some, but not, Lassen employees' names and race. This exhibit is of very limited, if any, probative value, however, as it is incomplete.

The Court both accepts Plaintiff's admission and finds the defense witness testimony in this regard to be credible. As such, the Court finds that Plaintiff has not proved by a preponderance of evidence that he was discriminated against in not being asked to return for the 2016 seasonal maintenance worker position or not being considered for the open permanent maintenance worker position because of Plaintiff's race.

### 3.   Did Ramirez suffer any damages as a result of Defendant's alleged discrimination

The Court finds in the negative. Because the Court finds that Defendants did not discriminate against Plaintiff based on his race, Plaintiff therefore suffered no damages resulting from racial discrimination.

### 4.   Did Ramirez mitigate his damages

The Court finds in the negative. This question is answered based on the stipulated facts. Specifically, stipulated fact No. 23 includes the agreed acknowledgement that: "After his employment at LVNP, Ramirez has not sought other employment and/or has not been employed."

/ / /

1    / / /

2    / / /

3    / / /

4    / / /

5          **5.    Did, as a temporary, seasonal Maintenance Worker,**
              **Ramirez have a broad spectrum of responsibilities**
6

7                      **and**

8          **6.    Was Ramirez expected to assist with park maintenance,**
              **including repairs, painting, carpentry, masonry, and plumbing**
9

                       **and**
10
           **7.    Did Ramirez's job responsibilities include custodial duties of**
              **cleaning restrooms, mopping and waxing floors, cleaning**
11             **mirrors, windows, urinals, and toilet bowls**

12              The Court finds in the positive as to all three questions.  Plaintiff was classified as

13   a maintenance worker, grade 4749-07 (WG-4749-07). 152:10-11.  The maintenance worker

14   outline, Ex. 101, is "what every maintenance worker is supposed to do." 52:18-53:1.  The job

15   duties of the maintenance worker is to maintain water system, clean buildings, painting, masonry

16   work, and light electrical (but have to be subordinate to a higher-grade employee to do electrical

17   work)—typical maintenance that you would find on a building, trail, or in a campground.

18   152:18-23.  In this position, Plaintiff was responsible for maintaining physical infrastructure in

19   the parks, typically roads and trails, buildings, campgrounds, utilities, public use facilities, and

20   comfort stations. 152:12:17.  Although not specifically "spelled out" in the job description, water

21   treatment was part of his duties as well.  Id.; Ex. 101.  In the summer of 2015, Plaintiff's actual

22   duties performed were primarily water treatment and the care of two campgrounds:  the

23   campground at Juniper Lake and at Warner Valley, including water treatment systems in both

24   areas.  130:16-21.  During the summer of 2015, Plaintiff was performing other non-water

25   treatment duties as well as administrative duties.  130:22-25.  The Court finds that the

26   preponderance of the evidence establishes that Plaintiff had a broad spectrum of job

27   responsibilities as a seasonal maintenance worker and this spectrum of job responsibilities

28   included repairs, painting, carpentry, masonry, and plumbing.

                                              12

1    / / /

2    / / /

3    / / /

4    / / /

5    **VIII.  CONCLUSIONS OF LAW**

6    Following the Court's order on summary judgement, ECF No. 40, the remaining

7 legal question is whether Defendant employer's proffered explanation for not re-hiring Plaintiff is

8 unworthy of credence. The Court having found that in the context of Plaintiff's Title VII

9 employment discrimination claim Plaintiff had established a prima facie case of disparate

10 treatment, the burden of production shifted to the Defense to "articulate some legitimate,

11 nondiscriminatory reason for the challenged action." Id., citing Rivera, 799 Fed. Appx. at 483

12 (citing Chuang v. Univ. of California Davis, Bd. of Trs., 225 F.3d 1115, 1123-24 (9th Cir. 2000)).

13 On summary judgment the Court also found that Defendant had met the threshold showing of a

14 nondiscriminatory reason for the employment decision, but that Plaintiff had subsequently failed

15 to establish that the employer's reasons for the challenged action were mere pretext and "that a

16 discriminatory reason more likely motivated the employer." Id. at 8-10 (quoting Rivera, 799 Fed.

17 Appx. at 483 (citations omitted)).  The evidence introduced at trial did not change these

18 conclusions.

19    However, in ruling on Defendant's dispositive Motion, the Court held that there

20 remained the issue of whether Defendant employer's proffered explanation is unworthy of

21 credence." Id. (citations omitted). As to that remaining issue, and pursuant to Federal Rule of

22 Civil Procedure 52(a)(1), the Court separately states the following conclusions of law consistent

23 with the above-cited legal principles, the stipulated facts, and the specially stated findings of facts

24 in dispute.

25    The Court finds as credible the Defendant's explanation for not re-hiring Plaintiff

26 as based on Plaintiff's job performance and considerations of economics, rather than any racial

27 motivation. Not only has Plaintiff simply offered no evidence corroborating his claim that anyone

28 involved in this case acted to discriminate against Plaintiff based on race, the evidence presented

by the defense, as well as those facts stipulated to by both parties, establish that the Defendant's

proffered explanation is worthy of credence.

/ / /

/ / /

This conclusion of law is supported by the stipulated facts, specifically the

following:

2.     Ramirez was a temporary, seasonal Maintenance Worker, WG-4749-07, at U.S. Department of the Interior ("DOI"), National Park Service ("NPS"), Lassen Volcanic National Park, ("LVNP") Mineral, CA.

11.     Since Ramirez only occupied a temporary, seasonal position, as opposed to a permanent one, he was not guaranteed a position from one season to the next.

12.     Ramirez's temporary, seasonal appointment did not confer eligibility to be promoted or reassigned to other positions at LVNP.

13.     Ramirez had reinstatement eligibility that afforded him an opportunity to potentially return each season depending on his performance, the needs of LVNP, and if funding was available.

14.     Ramirez's temporary, seasonal appointment could be terminated at any time prior to the end of the specified appointment period.

The Court's conclusion of law is also supported by testimony of the defense

witnesses Gibbons and Mott.[4]  In particular, Mr. Gibbons testified:

Q:     And, Mr. Gibbons, I'm just going to point blank ask you.  Did Mr. Ramirez's race factor into any decision you made while you were superintendent at Lassen?

A:     No.

Q:     And so just to be clear, did you consider n any respect Mr. Ramirez's race when you made the decision to not advertise and fill that permanent maintenance position with a new hire?

A:     No.

Q:     And did you have any knowledge, Mr. Gibbons, whether anyone at Lassen, Gary Mott or otherwise, ever made any decisions with respect to Mr. Ramirez's employment based on his race?

A:     No.

---

[4]     As noted above, Plaintiff does not claim Hayden's conduct was racially motivated.

14

1    Q:    What is your understanding, Mr. Gibbons, as to why Mr.
Ramirez was not ultimately asked to return to Lassen as a seasonal maintenance
2    worker?

3    / / /

4    / / /

5    / / /
     A:    My understanding that Mr. Ramirez – excuse me – that Mr.
Ramirez was not asked back is that he was not a very good employee, and he was
6    not a team player, simple as that.

7    112-13:15-9.

8
Mr. Mott testified similarly:
9
     Q:    Mr. Mott, did you hire Mr. Cole over Mr. Ramirez because of
10   Mr. Ramirez's race?

11   A:    No.

12   Q:    Why did you choose not to ask Mr. Ramirez back for the 2016
temporary position?
13
     A:    I felt Mr. Ramirez had a poor work ethic.  He was resistant to
14   management and supervisory assignments. . . .

15   167:15-22.

16
The Court finds this testimony credible.
17

18                          **IX.  DECISION**
19
     Based on the foregoing, the Court determines that Plaintiff has not established by a
20
preponderance of the evidence that he is entitled to damages as a result of race-based employment
21
discrimination in violation of Title VII.  The Clerk of the Court is directed to enter judgment in
22
favor of Defendant pursuant to Federal Rule of Civil Procedure 58 and close this file.
23
     *IT IS SO ADJUDGED AND ORDERED.*
24

25
Dated:  January 3, 2023
26                                          _____
27                                          DENNIS M. COTA
                                            UNITED STATES MAGISTRATE JUDGE
28